**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:14-CV-00034-GNS**

SIERRA ENTERPRISES, INC., *et al.* Plaintiffs,

v.

SWO & ISM, LLC, *et al.* Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Motion for Reconsideration of Order Granting Plaintiffs' Motion to Amend filed by Defendants SWO & ISM, LLC, *et al.* ("SWO"). (Docket No. 66.) Plaintiffs Sierra Enterprises, Inc., *et al.* ("Sierra") have responded, (Docket No. 76), and SWO has replied, (Docket No. 79). Fully briefed, this matter is ripe for consideration. For the reasons set forth below, SWO's motion will be denied.

**Factual and Procedural Background**

The instant motion arises from the soured investment arrangement between SWO and Sierra, two parties between whom no love is lost. After Sierra's investment in SWO's oil and gas ventures proved unsuccessful, the two initially agreed to a settlement requiring SWO to pay Sierra a total of $836,579.88 in two distinct sets of payments and governed by simultaneous payment schedules. The Settlement Agreement first specified a "Settlement Amount" of $659,579.88, plus 5% interest; it also required SWO to remit an "Equipment Purchase Amount" of $177,000.00, plus 5% interest. The Settlement Amount was to be paid in monthly installments of $47,904.22, on or before the first day of each month until April 1, 201, following an initial payment of $100,000.00. The Equipment Purchase Amount required to be paid in monthly installments of $7,765.24 on or before the first day of each month until April 1, 2015. All told, SWO owed Sierra a combined monthly payment of $55,669.46 from May 1, 2013, until April 1,

2014, after which time $7,765.24 would be due until April 1, 2015. In exchange, SWO would receive ownership of certain equipment and a release from Sierra's claims.

That release would become the subject of much dispute. The Settlement Agreement provides, in relevant part:

> IF COMPANIES BREACH THIS AGREEMENT IN ANY WAY (INCLUDING, BUT NOT LIMITED TO, MISSING ANY PAYMENT DUE HEREDUNER), THE PARTIES AGREE THAT PARTICIPANTS HAVE NOT AND DO NOT WAIVE THEIR RIGHT TO SEEK ANY AND ALL CLAIMS AND DAMAGES THEY HAVE AGAINST THE COMPANIES AND THEIR AFFILIATED ENTITIES AND PERSONS; PROVIDED, HOWEVER, THAT IF THE COMPANIES HAVE PAID THE FULL SETTLEMENT AMOUNT, BUT HAVE NOT PAID THE FULL EQIPMENT PURCHASE AMOUNT, PARTICIPANTS CAN ONLY ASSERT CLAIMS AND SEEK DAMAGES RELATED TO THE CLASS B EQUIPMENT[.]

(Docket No. 76-1 at 9.)

SWO asserts that it fulfilled the requisite monthly payments toward the Settlement Amount from May to November 2013 and provided partial payment of December's amount due. According to Sierra, however, SWO was $79,093.28 in arrears after December 1, 2013. Sierra informed SWO of its default by a December 18, 2013, letter to the company's counsel and offered to continue the parties' settlement agreement subject to additional consideration. In lieu of a response, on approximately December 27, 2013, Sierra itself—rather than its counsel—received a check drawn on SWO's account in the amount of $208,588.24, with the notation "Full and Final Payment for Settlement Amount – Drill." The accompanying check stub referenced that it constituted payment for the "EquipLoan."

Although SWO contends that this check fully satisfied the Settlement Amount, Sierra insists that the Settlement Agreement had been terminated by SWO's breach. Sierra reasons that it was therefore entitled to apply the proceeds of the check toward the $186,365.66 that was

outstanding on the Equipment Purchase Amount, with the remaining credited to the $16,971.36 that was past due under the Settlement Amount. According to SWO, Sierra improperly construed this payment as a dilatory tactic grounded in its desire to retain the claims it had surrendered in the Settlement Agreement.

Sierra filed its Complaint on March 5, 2014, alleging that SWO fraudulently induced Sierra to invest in various oil and gas operations in Central Kentucky. (Docket No. 1.) On September 1, 2014, Sierra moved to amend its complaint to add as defendants several additional parties affiliated with SWO. (Docket No. 58.) The Court granted the motion on the following day without having afforded SWO the opportunity to respond. (Docket No. 59.)

**Analysis**

In the instant motion, SWO argues that Sierra's amended complaint seeks to elaborate upon allegations that were improperly asserted initially. Specifically, SWO insists that by filing this lawsuit, Sierra directly contravened the Settlement Agreement by asserting claims against individuals and entities that had been released. Relying on this argument, SWO asks the Court to reverse its order permitting Sierra to amend its complaint.

To be sure, "[d]istrict courts possess the authority and discretion to reconsider and modify their interlocutory orders at any time before final judgment." *Leelanau Wine Cellars Ltd. V. Black & Red, Inc.*, 118 Fed. Appx. 942 (6th Cir. 2004). Although the Court recognizes its discretion to vacate its earlier ruling, however, it perceives no basis for doing so. The Federal Rules of Civil Procedure advise that a district court should freely grant a plaintiff leave to amend his complaint "when justice so requires." Federal Rule of Civil Procedure 15(a)(2). This liberal standard informed the Court's order granting Sierra's motion to amend.

As SWO notes, the Court may deny a plaintiff leave to amend his complaint "when the proposed amendment would be futile," *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006), or "if the amendment is brought in bad faith, for dilatory purposes, [or] results in undue delay or prejudice to the opposing party." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Unsurprisingly, the parties level accusations of just such conduct against each other. SWO asserts, for example, that Sierra inflated the amount of potentially recoverable damages and misrepresented the Settlement Agreement's terms. SWO further argues that Sierra breached not only the Settlement Agreement, but the covenant of good faith and fair dealing that they owed under Kentucky law. *See Farmers Bank & Trust Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citing *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991)). This breach is evidenced by Sierra's failure to provide notice of breach or default prior to filing the lawsuit and seeking the accompanying attachment order, SWO says, as well as by improperly manipulating the payments discussed above. Sierra counters that any bad faith is attributable instead to SWO, alleging that SWO attempted to vitiate Sierra's rights by paying one of the schedules with no intent to fulfill its remaining obligations. Sierra further alleges that throughout this litigation, SWO violated various court orders, hindered discovery, and substantially delayed the action's progress.

At the heart of SWO's motion, however, is its contention that the Settlement Agreement precludes Sierra from pursuing its initial claims; SWO urges the Court to recognize only those claims related to the Equipment Purchase Amount. This argument is best reserved for a later phase of litigation. The Court notes Sierra's difficulty in garnering responses to subpoenas from various entities purportedly associated with SWO, as well as the troublesome practices noted at the hearing on Sierra's Motion for Temporary Restraining Order and Preliminary Injunction. (*See* Docket No. 40.) At this early stage, the Court need not reject Sierra's routine amendment of its pleadings, particularly in light of the ample questions of fact that emanate from SWO's own

arguments. Because the Court cannot say that Sierra's amendment would be futile, it need not deny the motion to amend.

## CONCLUSION AND ORDER

For the reasons explained above, the Court hereby DENIES the Motion for Reconsideration of Order Granting Plaintiffs' Motion to Amend filed by Defendants SWO & ISM, LLC, *et al.* (Docket No. 66.)

Greg N. Stivers, Judge
United States District Court

January 21, 2015